UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Liberty Mutual Insurance Company a/s/o Marc Rysman,<br><br>  Plaintiff,<br><br>v.<br><br>Broan-NuTone LLC,<br><br>  Defendant. | Civil Action Number: 1:21-cv-11986 |

**MEMORANDUM IN SUPPORT OF BROAN-NUTONE LLC'S
MOTION FOR SUMMARY JUDGMENT AND
MOTION TO EXCLUDE UNRELIABLE OPINIONS OF JEREMIAH PRATT**

**I. INTRODUCTION**

The property owner's insurer brought this subrogation action to recover payments it made to its insured following a structure fire on December 17, 2018. (Complaint ¶¶ 8-10.) Liberty Mutual Insurance Company, in its complaint against ventilation fan manufacturer Broan-NuTone LLC ("Broan"), alleges that a bathroom ventilation fan designed and sold by Broan caused the fire. (*Id*. ¶¶ 6-7.) The plaintiff alleges defects in both manufacture and design based in both negligence (Count 1) and breach of implied warranty of merchantability (Count 2), as well breach of the implied warranty of fitness for a particular purpose (Count 3) and violation of General Laws Chapter 93A (Count 4). (*Id*. ¶¶ 12-13, 15-17, 30.)

The plaintiff's lone expert, Jeremiah Pratt, when asked if the fan was defective, testified "[a]ll I can say is, I did not claim in this report [*i.e.*, his Rule 26 expert report] that that was defective." (Ex. 3, Pratt 169:22-170:3.) Mr. Pratt does not opine that the product at issue was defectively designed or manufactured. (*Id*.) This ends the case.

Because there will be no evidence of defect, all counts in the complaint fail as a matter of law. The plaintiff's expert does not think (and will not opine) that the fan was defectively designed. Moreover, the plaintiff's expert says nothing about a manufacturing defect. Accordingly, the plaintiff's negligence and warranty of merchantability counts (Counts 1 & 2) fail as a matter of law. Count 3, based upon an implied warranty for a fitness for a particular purpose, fails because the plaintiff's insured used the fan for its intended purpose and never communicated its use to Broan. The wholly derivative Chapter 93A claim (Count 4) fails because it rests entirely upon the failed breach of warranty of merchantability count. Mr. Pratt's causation opinion must be excluded, even if Mr. Pratt's failure to find a defect was not fatal to the plaintiff's case, which it is, because it is not based upon a reliable methodology or principle. Accordingly, Broan is entitled to summary judgment in its favor on all counts.

## II.  BACKGROUND

Insureds Marc Rysman and Michelle Ephraim lived in their Brookline house with their four children. (Ex. 4, Marc Rysman 10:13-11:9.) On December 17, 2018, Ava Rysman, then a high school senior, was the only one home at the time of the fire. (Ex. 6, Ava Rysman 15:13-14, 40:5-7.) While on the first floor, she heard the smoke alarm and left without going upstairs. (Ex. 6, Ava Rysman 18:16-19:13, 32:19-22.) No one was injured.

The fan, a NuTone 763RLN, had been installed in the ceiling of the second floor bathroom prior to the Rysmans' purchase of the home in 2006. (Complaint ¶ 6; ex. 3, Pratt 9:16-19; ex. 4, Marc Rysman 10:13-19, 39:2-9; ex. 5, Ephraim, 17:14-18:4.) The fan was used as a second floor bathroom ventilation fan. (Ex. 5, Ephraim 16:11-16.) Both the fan and its component parts, including the appliance wiring and its insulation, met UL safety requirements

and testing. (Ex. 3, Pratt 141:21-142:23). The fan was functioning properly prior to the fire. (Ex. 4, Marc Rysman 36:4-17; ex. 5, Ephraim 16:11-17:6; ex. 6, Ava Rysman 20:21-21:19.)

On December 8, 2021, the plaintiff-insurer, as subrogee of the Rysmans, filed a lawsuit against Broan. On February 17, 2022, Broan served interrogatories on the plaintiff. On December 7, 2023, the plaintiff served answers to Broan's interrogatories. (Ex. 1, Ans. Interrog.) The interrogatories asked the plaintiff to "state the basis" for the contentions that "Broan's negligence caused the fire," "the fan was defective," "Broan breached any implied warranty of merchantability," "Broan breached any implied warranty of fitness for a particular purpose," and "Broan breached the Massachusetts Consumer Protection Act." (Ex. 1, Ans. Interrogs. 9-13.) There will be no evidence on these claims other than what is in Mr. Pratt's report. (*Id*.)

On October 28, 2022, the plaintiff disclosed the expert opinions of Jeremiah Pratt. (Ex. 2.) On July 19, 2023, Broan took the expert deposition of Mr. Pratt. (Ex. 3, Pratt transcript.) Generally, Mr. Pratt opined that normal vibrations within the fan caused the insulation of appliance wiring within the fan's wiring compartment to abrade and short, causing ignition. (Ex. 3, Pratt 114:9-115:2.) He admittedly did no testing to determine whether the hypothesis that vibrations could cause abrasion of UL compliant insulation wires was even possible. (Id. at 148:1-149:4.)

At deposition, Mr. Pratt specifically denied that he opines that the fan was defective. He testified:

> Q. And are you claiming that because this was or not, simply because this was in a fire, that it was not reasonably fit or you just haven't come to that conclusion yet one way or the other?
> A. My conclusion in my report is that this unit, the vibrations in this unit caused the insulation to wear off that wire, and this unit is the cause of the fire.
> Q. Right.· But you're not claiming that it was defective, you're just saying this is what happened?
> MR. CAIN: Objection.

3

A. **All I can say is, I did not claim in this report that that was defective**.

(Ex. 3, Pratt 169:14-170:3 (emphasis added).)

Regarding the fan's design, Mr. Pratt merely opines that "there's room for improvement," but conceded that all products could be improved. (*Id*. at 168:20-169:5.) Mr. Pratt simply did not claim in his report or at deposition that the fan was defective. No other evidence supports a defect. (Ex. 1, Ans. Interrogs. 9-13.)

III.   **CONCISE STATEMENT OF THE MATERIAL FACTS**

1. Exhibit 1 is a true and accurate copy of the Plaintiff, LM General Insurance Company's Answers to Defendant, Broan-NuTone LLC's First Set of Interrogatories.
2. Exhibit 2 is a true and accurate copy of the expert report of Jeremiah Pratt.
3. Exhibit 3 is a true and accurate copy of the transcript of the July 19, 2023 deposition of Jeremiah Pratt.
4. Exhibit 4 is a true and accurate copy of the transcript of the June 2, 2022 deposition of Marc Rysman.
5. Exhibit 5 is a true and accurate copy of the transcript of the August 16, 2022 deposition of Michelle Ephraim.
6. Exhibit 6 is a true and accurate copy of the transcript of the August 16, 2022 deposition of Ava Rysman.
7. Exhibit 7 is a true and accurate copy of a portion of the transcript of the October 18, 2023 deposition of Stephen Campolo.

IV.   **ARGUMENT**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in [its] favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  However, when "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), quoting Fed. R. Civ. P. 56(e).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id*. at 256-57.  Because there is no dispute that there will be no affirmative evidence that the plaintiff's alleged design or manufacturing defect caused the fire, Broan is entitled to summary judgment on all of the plaintiff's claims.

    **A.**    **There Is No Evidence of Design Defect Without Which Broan Is Entitled to Summary Judgment.**

There is no evidence that the fan was defective in design.  The plaintiff's expert merely opines that the fan caused the fire but does not opine that it was a defect within the fan that existed at the time Broan sold the fan that caused the fire.  (Ex. 2, Pratt report, p. 21.)

In the absence of expert opinion on the issue of defect, the plaintiff's negligence count and breach of warranty design count (Counts 1 and 2) fail as a matter of law.  "Under Massachusetts law, both negligent design and breach of warranty claims require proof of a

5

design defect or an unreasonably dangerous condition that existed when the product left the defendant's control." *King v. Pierce Mfg., Inc.*, 608 F. Appx. 18, 19–20 (1st Cir. 2015), citing *Enrich v. Windmere Corp.*, 416 Mass. 83, 87–89 (1993). "The presence of a defect, in turn, typically 'cannot be inferred in the absence of expert testimony.'" *King*, 608 F. Appx. at 20, quoting *Enrich*, 416 Mass at 87. "Such testimony is required in complex product liability cases in order to mitigate against jury 'conjecture and surmise' regarding the cause of the injuries at issue and the relevant standard of care." *Id.*, quoting *Triangle Dress, Inc. v. Bay State Serv., Inc.*, 356 Mass. 440, 441 (1969); see also *Hochen v. Bobst Grp., Inc.*, 290 F.3d 446, 451 (1st Cir. 2002) (applying Massachusetts law).

Like many products, a ventilation fan is, "[b]y its nature . . . a complex, technical piece of machinery, whose design and operational requirements are not straightforward." *Esturban v. Massachusetts Bay Transp. Auth.*, 68 Mass. App. Ct. 911, 911 (2007). "[W]ithout adequately founded essential, expert guidance on the proper design and operation" of the complex product, such as a ventilation fan, "a jury would have to resort to impermissible conjecture and surmise regarding the applicable standard of care and the cause of injuries stemming from the accident." *Esturban*, 68 Mass. App. Ct. at 911 (escalator), quoting *Triangle Dress, Inc.*, 356 Mass. at 441–442 (air conditioner); accord *Enrich*, 416 Mass. at 87 (electric fan); *One Beacon Insurance Company v. Electrolux*, 2009 WL 10728827, at *22 (D.Mass. 2009) (electric dryer); *Vail v. Peter Pan Bus Lines, Inc.*, 2020 WL 1189674, at *2 (Mass. App. Ct., 2020) (bus); *Donahue v. Town of Stow*, 2007 WL 2948133, at *2 (Mass. App. Ct. 2007) (elevator doors); *Madigan v. General Motors Corp.*, 2009 WL 77975, at *2 (Mass. App. Ct. 2009) (air bag); *Safety Ins. Co. v. Home Store, Inc.*, 2005 WL 503731, at *3 (Mass. Super. 2005) (fuel valve).

In *Enrich*, the plaintiff alleged an electric fan was defective and caused a fire but did not provide any expert testimony to support the claim of defect. The Supreme Judicial Court, held that "[t]he jury would not be warranted in finding that it was more probable that the fire occurred because of a defect or malfunction in the fan instead of some other cause for which the defendant is not responsible." *Enrich*, 416 Mass. at 87. Accordingly, "[a] verdict for the plaintiff here would, therefore, be based on speculation and conjecture." *Id*.

Simply put, the design of the Broan ventilation fan is well beyond the scope of an average person's knowledge. "If the machinery at issue, by its nature, has a complex design and operation outside the scope of an average person's knowledge such that a jury would have to resort to 'conjecture and surmise' without expert testimony, the lack of such testimony is fatal to an implied warranty claim that requires proof of a defect." *Vail*, 2020 WL 1189674, at *1–2 (Mass. App. Ct. 2020), quoting *Esturban*, 68 Mass. App. Ct. at 911-912. Without expert opinion (or any other evidence) on design defect, Broan is entitled to summary judgment on the design defect claims of Counts 1 and 2.

    **B.    There Is No Evidence of a Manufacturing Defect Without Which Broan Is Entitled to Summary Judgment.**

"In order to establish a manufacturing defect, a plaintiff must demonstrate that there is a 'deviation from the design [that] rendered the product unreasonably dangerous and therefore unfit for its ordinary purposes.'" *Burnham v. Wyeth Labs. Inc.*, 348 F. Supp. 3d 109, 112 (D. Mass. 2018), quoting *Back v. Wickes Corp.*, 375 Mass. 633, 641, 378 N.E.2d 964 (1978); accord *Niedner v. Ortho-McNeil Pharm., Inc.*, 90 Mass. App. Ct. 306, 313 (2016). Mr. Pratt does not opine that the fan deviated from its design. (Ex. 2, Pratt report.) There is no other evidence of deviation. (Ex. 1, Ans. Interrog. 9-11.) Summary judgment in Broan's favor is required on the manufacturing defect claims of Counts 1 and 2 because the "summary judgment record is devoid

7

of any evidence that the [fan] was manufactured differently, or deviated in any respect from its intended design." *Niedner*, 90 Mass. App. Ct. at 313.

      C.      **The Claim for Implied Warranty of Fitness for a Particular Purpose Fails as a Matter of Law Because the Plaintiff's Insured Used the Fan for Its Ordinary Purpose and Did Not Communicate with Broan About a Specific Use for the Fan.**

"Under Massachusetts law, an implied warranty of fitness for a particular purpose exists where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 297 (D. Mass. 2009) (internal quotes omitted), quoting *American Shooting Sports Council, Inc. v. Att'y Gen.*, 429 Mass. 871, 878 n. 10 (1999) (quoting G.L. c. 106, § 2–315). "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Rule*, 604 F. Supp. 2d at 297, quoting *Hannon v. Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 821 (1982) (quoting U.C.C. § 2–315 cmt. 2). "Consequently, [Broan] can only be liable for a breach of the implied warranty of fitness if [the plaintiff's insured] envisaged a specific use for [the ventilation fan] peculiar to [himself], and if [he] communicated that specific purpose to [Broan]." *Rule*, 604 F. Supp. 2d at 297.

According to the insured, when he purchased the house, the fan was already installed. (Ex. 4, Marc Rysman 39:2-9.)  Accordingly, he did not communicate with Broan regarding the purchase.  Moreover, the fan was used as a bathroom ventilation fan, that is, for its ordinary purpose. (Complaint ¶ 19; ex. 5, Ephraim 16:11-16.)  Because the insured neither communicated with Broan regarding the use of the fan at the time of purchase and the fan was used for its

8

ordinary purpose, the count for breach of warranty of fitness for a particular purpose fails as a matter of law.  *Rule*, 604 F. Supp. 2d at 297; *Ahern v. Sig Sauer, Inc.*, 2021 WL 5811795, at *3 (D.Mass. 2021); *Leach v. Honeywell International Inc.*, 2014 WL 12585799, at *6 (D.Mass. 2014)

### D. The G.L. c. 93A Claim Fails Because It Is Wholly Derivative of the Breach of Warranty of Merchantability Claim.

Where the plaintiffs' breach of warranty claim fails a matter of law as set forth above, the consumer protection claim must also fail because the count is based solely on the alleged breach of warranty of merchantability.  (Complaint ¶ 22 ("The defendant's breaches of the applicable warranties in this matter are violations of the regulations of the Massachusetts Consumer Protection Statute."); ex. 1, Ans. Interrog. 13.)  Without any independent basis, and with the failure of the warranty claim as a matter of law as set forth above, the Chapter 93A claim also fails as a matter of law.  *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 741, n.10 (Mass. 2000) ("[B]ecause the warranty [of merchantability] claim is without merit, the derivative c. 93A claim also fails."); *Flemming v. Greystar Mgt. Servs., L.P.*, 100 Mass. App. Ct. 469, 475 (2021) ("Because Flemming's c. 93A claim was derivative of her claim under the security deposit statute, she cannot establish a c. 93A violation pertaining to the animal rent, reletting and buyout fees, and attorney's fees.); *Cameron v. FCA US LLC*, 2022 WL 619519, at *3 (Mass. App. Ct. 2022) ("It is well settled that where a plaintiff's G. L. c. 93A claim is wholly derivative of a meritless statutory or common-law claim, the c. 93A claim must also fail as matter of law."); *Bergstresser v. Cooke*, 2000 WL 1909784, at *6 (Mass. Super. 2000) (The "theory of liability . . . under c. 93A . . . is entirely derivative of the negligence and breach of warranty theories.  The defects in those theories thus compel rejection of this theory as well."); *Rivera v. Chrysler Group, LLC*, 2010 WL 8490859, at *5 (Mass. Super. 2010) ("[B]ecause I find that the defendants

did not breach the express or implied warranties and because Rivera's 93A claims are derivative of the breach of warranty claims, the 93A claims fail as a matter of law.")

> **E. Mr. Pratt's Unreliable Opinions That the Arcing Within the Fan's Wiring Compartment Was Due to Abrasion of Insulation and Caused the Fire Must Be Excluded.**

Rule 702 requires the Court to act as a gatekeeper to ensure that an expert's testimony "rests on a reliable foundation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 580 (1993). That is, the rule mandates that an expert's opinion "is the product of reliable principles and methods." Fed. R. Civ. P. 702(c).

Mr. Pratt claims that the UL-approved standard appliance wiring in the fan's wiring compartment arced to the smooth steel side of the compartment (known as the "scroll") after the insulation on the wire was compromised. There is no dispute that the appliance wiring in the wiring compartment arced to the steel scroll. However, Mr. Pratt makes two baseless leaps – opining that (1) the insulation on the appliance wiring deteriorated by abrasion (against the smooth steel scroll) prior to the fire and (2) the resulting arc ignited the fire. These opinions are unsupported and unsupportable, and are a product of an unreliable methodology, *i.e.*, the *ipse dixit* of Mr. Pratt.[1]

Arcing in conductors can be either a cause of or a result of a fire. (Ex. 3, Pratt 88:7-12.) Insulation on wiring can be compromised prior to a fire, and the resulting arcing events can cause a fire. (*Id*. at 69:4-19.) For example, rodents are known to chew insulation and cause fires. (*Id*. at 69:4-19.) Mr. Pratt did not look for evidence of rodent damage at the scene. (*Id*. at 68:22-69:3.) Additionally, wiring insulation can be damaged during installation. In the area of

---

[1] Following the fire, the insulation near the arcing on the appliance wiring and the building wiring was gone, and accordingly, there was no way to assess the condition of the pre-fire insulation. (Ex. 2, Pratt report, p. 16, photo 7; ex. 3, Pratt 56:6-23.)

origin, two of the building's electrical wires (on separate circuits) arced. (*Id.* at 56:6-11, 63:19-24, 70:17-20, 92:14-24.) Although Mr. Pratt opines that arcs in the building wiring were caused by the fire, he recognizes that arcing events such as these are potential causes of the fire. (*Id.* at 92:14-24.) Insulation on wires in appliances and wires in the building can also melt during a fire, exposing the conductor, which can lead to electrical arcing. (*Id.* at 88:7-12.) Mr. Pratt offers no scientific basis for identifying one set of arcs as a cause of the fire and the other an effect.

Mr. Pratt lacks a reliable methodology when he claims that the arcing within the fan's wiring compartment must have been caused by vibrations and abrasion, leading to the fire. First, Mr. Pratt had no evidence of unusual vibrations. (Ex. 3, Pratt 136:4-9.) Second, Mr. Pratt has no scientific basis for his assumption that the appliance wire insulation could be abraded away or how that might happen. Third, Mr. Pratt has no scientific basis for concluding that the arcing on the scroll was the cause of the fire as opposed to the arcing on branch wiring that he admits was in the area of origin of the fire.

Mr. Pratt performed no testing to rule in or out any of his hypotheses on these core issues. (*Id.* at 148:1-149:4; ex. 2.) Nor did he rely upon outside testing. (Ex. 2.) Mr. Pratt did not rely upon any treatises or any scientific principles. (*Id.*) Instead, he relied upon what he deemed "cognitive[] test[ing]," which is no more than saying *ipse dixit*. (Ex. 3, Pratt 148:1-10.) If *Daubert* stands for anything, it stands for the fundamental principle that the "because I say so" is not enough, even under the most cursory of oversight, to allow it into evidence. There must be some methodology supporting the opinions and here Mr. Pratt fails. These scientifically unsupported and unreliable opinions (that the fan vibrated sufficiently to cause the wires to rub against the smooth steel scroll within the fan's wiring compartment, abrading the insulation, and

11

this was the cause of the fire) must be excluded. Fed. R. Evid. 702(c) (opinion must be "the product of reliable principles and methods").

Testing of Mr. Pratt's hypothesis is possible. Contrary to Mr. Pratt's decision not to replicate the phenomenon he alleged, Broan did tests to disprove Mr. Pratt's hypothesis. Broan's expert, Stephen Campolo, physically examined the metal scroll on an exemplar fan, determining it to be "extremely smooth and free of sharp edges, burrs, or any other type of irregularities." (Ex. 7, Campolo 56:5-12.) He also rubbed exemplar appliance wires on the smooth steel "scroll as hard as [he] could." (*Id*. at 56:20-57:2.) Broan's experts then ran tests for abrasion, placing the exemplar appliance wires so that they were touching the steel scroll for over 1,000 hours with an operating motor and determined there was no abrasion whatsoever. (*Id*. at 64:13-20.) Unlike Broan's expert who disproved Mr. Pratt's hypothesis (which they did not have to do), Mr. Pratt has no scientific basis to claim that the UL-tested appliance wiring would abrade due to normal vibrations against a smooth steel surface (even though plaintiff in fact bears the burden of proof on these issues). The obvious conclusion is that Mr. Pratt did not perform this testing because he knew, or at least suspected, it would not produce the desired result.

In *Netherlands Insurance Company v. HP, Inc*., this Court addressed the standard for a *Daubert* challenge of an electrical expert in a products action. 646 F.Supp.3d 139 (2022). In the case, Liberty Mutual Fire Insurance Company (the very same plaintiff who presses this action) and Netherlands Insurance Company brought an action against HP, alleging that a printer was defective and caused a fire. The plaintiffs' electrical expert performed at least some testing on the printer to prove "the validity of his proposed ignition scenario." *Id*. at 151. Because the expert used scientific principles to test his hypothesis, the Court correctly ruled that the plaintiffs' expert opinion was reliable enough under the *Daubert* standard at least to be admissible. *Id*. at

154. Unlike in *Netherlands Insurance Company*, Mr. Pratt did no testing to establish his hypothesis that vibrations caused insulation failure that led to arcing. There is no scientific basis for Mr. Pratt's opinion. Mr. Pratt's opinion must be excluded because it is not a "product of reliable principles and methods." Fed. R. Evid. 702(c).

To assess Mr. Pratt's opinion, this Court "may consider factors including whether the theory or technique has been tested; whether it has been subjected to peer review and publication; in the case of a technique, its known or potential rate of error as well as the existence and maintenance of any standards controlling its operation; and the extent of its acceptance within the relevant scientific community." *Netherlands Insurance Company*, 646 F.Supp.3d at 145. Mr. Pratt's unsupported opinion fails all of these factors. Mr. Pratt performed no tests and relied upon no tests by others. He cites to no publications or treatises because his unsupported opinion and unreliable methodology is not accepted in the scientific community. In fact, the fan and the "typical wire insulation" on the appliance wiring met industry standards and was UL tested and approved. (Ex. 3, Pratt 141:6-142:23.) Mr. Pratt, without citing scientific principles or using a scientific methodology, claims that he used "cognitive[] test[ing]" to divine that the insulation must have abraded against the smooth steel scroll prior to the fire, causing the fire. (Ex. 3, Pratt 148:1-10.) Mr. Pratt's opinions on the central issues to the case must be excluded.

Without Mr. Pratt's unreliable opinion, the plaintiff cannot prove causation and Broan is entitled to summary judgment on all counts even if the plaintiff could prove a defect, which it cannot. *Fernandes v. Union Bookbinding Co.*, 400 Mass. 27, 37 (1987) (causation due to defect necessary element "to invoke the implied warranty of merchantability under § 2–314"); *Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*, 557 F. Supp. 3d 261, 280 (D. Mass. 2021)

(causation necessary element for negligence), citing *Davis v. Westwood Group*, 420 Mass. 739, 652 N.E. 2d 567, 569 (Mass. 1995).

## IV. CONCLUSION

For these reasons, Broan's motion for summary judgment should be allowed and all counts be dismissed.

Respectfully submitted,

BROAN-NUTONE LLC
By its attorneys,

/s/ Christopher A. Duggan
Christopher A. Duggan (BBO No. 544150)
Andrew D. Black (BBO No. 669839)
Smith Duggan Cornell & Gollub LLP
55 Old Bedford Road
Lincoln, MA 01773
(617) 228-4400
Chris.Duggan@SmithDuggan.com
Andrew.Black@SmithDuggan.com

Dated: December 8, 2023